MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:     2020 ME 141
Docket:       Aro-20-102
Submitted
  On Briefs:  September 29, 2020
Decided:      December 22, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

MEGGAN M. PRATT

HUMPHREY, J.

[¶1] Meggan M. Pratt appeals from a judgment of conviction of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2020), entered by the trial court (Aroostook County, *Nelson*, *J.*) after a jury trial. Pratt contends that (1) the court erred by allowing testimony from the victim—her fifteen-year-old daughter—concerning Pratt's parenting practices and (2) the State committed prosecutorial misconduct by commenting on inadmissible evidence during its cross-examination of Pratt. Because Pratt had, in her opening statement, indicated her pursuit of the parental discipline justification, 17-A M.R.S. § 106(1) (2020), the court did not err in admitting evidence regarding Pratt's parenting, and although the State committed prosecutorial misconduct in eliciting and commenting on evidence that other children had been removed

2

from Pratt's home, we cannot conclude that the error in admitting that evidence amounted to obvious error. We therefore affirm the judgment.

## I. BACKGROUND

[¶2] Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Ouellette*, 2019 ME 75, ¶ 1, 208 A.3d 399.

[¶3] Over Memorial Day weekend in 2019, Pratt and the victim had an argument because Pratt wanted to cut the victim's hair and the victim would not allow it. Pratt picked up a pair of scissors and moved toward the victim with them in her hand. The victim attempted to grab the scissors from Pratt, and the two struggled briefly until the victim eventually let go. Pratt then left to run an errand.

[¶4] Pratt returned approximately ten minutes later and told the victim that she would be punished for disobeying her mother. The victim said to Pratt, "You aren't even a mother to us." Pratt grabbed the victim by her arms, held her firmly, and said that she fed and clothed her and "[t]hat's all a mother is supposed to do." Pratt then smacked the victim's face with her right hand, leaving a bruise above the victim's left eye that persisted for several days. The victim hit Pratt in return, and the two "struggled for a bit" until Pratt pinned the

victim to the ground. Pratt did not allow the victim to get up until the victim calmed down.

[¶5] On June 12, 2019, the Aroostook County District Attorney charged Pratt with domestic violence assault. *See* 17-A M.R.S. § 207-A(1)(A). A jury trial was held on November 15, 2019, and in her opening statement, Pratt introduced the issue of "family dynamics" and the idea that parents are legally justified in using reasonable and moderate forms of punishment against their children.[1] At the trial, only Pratt and the victim testified.

[¶6] During its direct examination of the victim, the State asked where she was living, and the victim responded that she was currently living with her foster parents. The State then asked where the victim's siblings lived, and Pratt objected on relevance grounds. The State argued that this information was relevant to the issue of "the family dynamics" raised by Pratt in her opening,

---

[1] The relevant portions of Pratt's opening statement are as follows:

We would agree, starting right off, that there was an assault, there was physical contact between a mother and a child, and we will admit, as alleged in the complaint, it was a child in the family household. Th[ere] are no questions on this as it goes forward.

But then it becomes a question of what was happening in the family. What were the family dynamics? . . .

It's true that a parent may use punishment in all its different forms so long as they do not exceed the bounds of reason and moderation. . . .

[A] parent has had the right or the responsibility under the common law to use moderate and reasonable physical force without criminal liability.

4

but the court sustained Pratt's objection, noting that the question could indicate "to the jury that children may have been removed[]."

[¶7]  As the State's direct examination continued, the victim testified that she had told Pratt, "You aren't even a mother to us," and the prosecutor asked her why she had made that statement.  The victim responded that "all [Pratt] really did was stay in her room the majority of the time" and "didn't really treat us like we were her kids."  Pratt objected, arguing that the question lacked specificity,[2] but her objection was overruled.

[¶8]  The prosecutor then asked the victim more questions about Pratt's parenting practices, and the victim testified that "[Pratt] didn't really treat us like we were [her] kids" and "wouldn't really spend time with us," that Pratt did not cook for the children and "got us store-bought meals that were generally microwaved or easy to cook … [s]o we just made our own meals," and that Pratt did not do the victim's laundry and did laundry only for the younger children. Pratt objected to this line of questioning on relevancy grounds, and the State responded that its questioning was "getting into why [the victim] felt her mother wasn't her mother."  The court again overruled Pratt's objection, stating

---

[2]  Pratt stated that the grounds for the objection were that there was "[n]o indication as to when it took place, the circumstances under which it took place.  It was just generalized statements to the past.  No specificity."

that it would "allow a little bit of latitude on it."[3]  The State continued to ask more questions related to Pratt's parenting and engagement with her children, eliciting testimony about an alleged assault on another child, as well as Pratt's failure to play with or eat with her children.  Pratt did not object to this additional testimony.

[¶9]  In her direct testimony, Pratt explained that she slapped her daughter to avoid being assaulted by her.  She also explained that she had been raising children for twenty-four years and understood how to raise and discipline children.  During cross-examination of Pratt, despite the court's earlier ruling sustaining Pratt's objection to questions related to the victim's siblings being removed from the home, the State posed three questions about whether another child had been "taken out of the house."  And, in closing, the State again referred to the fact that the victim no longer lived with Pratt.[4]

---

[3]  It appears that the court at that time considered Pratt to be pursuing a parental discipline justification.  17-A M.R.S. § 106(1) (2020); *see* infra ¶ 10.  Before ruling on the objection, the court said, "[P]art of the evidence in this incidence is going to give the jury some indication as to why the child behaved a particular []way.  Isn't that more in line with what your client is seeking to present?"  The court then stated, "And so I'll allow a little bit of latitude on it."  The court explained its reason for allowing the State some latitude: "I can tell that the jury can understand what was going through the child's mind and especially her (indiscernible) issue of (indiscernible) justification."

[4] In the circumstances of this case, this likely constituted a fair comment on the evidence because Pratt had testified during her direct examination that the victim no longer lived with her but argued during her closing that life had gone on normally in the days following the incident.  Therefore, we do not address this particular comment further.

[¶10]    Despite having introduced both the parental discipline justification, *see* 17-A M.R.S. § 106(1), and the self-defense justification, *see* 17-A M.R.S. § 108(1) (2020), in her opening statement, and despite the record's appearance that the court and the State were under the impression that Pratt was pursuing both justifications, Pratt expressly waived the parental discipline justification after the close of evidence.  As a result, the court's jury instructions addressed only self-defense.  The jury found Pratt guilty of domestic violence assault.  On February 24, 2020, Pratt was sentenced to sixty days in jail, all suspended, and one year of probation.  Pratt timely appealed from the court's judgment.  *See* 15 M.R.S. § 2115 (2020); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

A.    Testimony Concerning Pratt's Parenting Practices

[¶11]  Pratt objected to the victim's testimony about Pratt not "treat[ing] [her children] like [they] were [Pratt's] kids," and about Pratt not doing the children's laundry, on the grounds that the information lacked specificity and was irrelevant to the assault charge.  When a proper objection has been made and the issue preserved, we review a trial court's determination of relevance for clear error and its ultimate ruling on admissibility for an abuse of discretion. *State v. Haji-Hassan*, 2018 ME 42, ¶ 13, 182 A.3d 145.  The clear error standard

"is similar to a sufficiency of the evidence standard in that it asks if the trial court's ruling on evidentiary foundation is supported by or not inconsistent with the facts that appear in the record." *State v. Dilley*, 2008 ME 5, ¶ 25, 938 A.2d 804 (quotation marks omitted).

[¶12] Pursuant to M.R. Evid. 401, "[e]vidence is relevant if . . . [i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action." Here, the State had the burden of proving beyond a reasonable doubt that Pratt "intentionally, knowingly or recklessly cause[d] bodily injury or offensive physical contact to [the victim]," 17-A M.R.S. § 207(1)(A) (2020), and that "the victim [was] a family or household member as defined in Title 19-A, section 4002, subsection 4," 17-A M.R.S. § 207-A(1)(A). Additionally, because the defendant introduced evidence sufficient to generate the issue of self-defense, *see id.* § 108(1); *State v. Begin*, 652 A.2d 102, 106 (Me. 1995), the State also had the burden of disproving that defense beyond a reasonable doubt, *see* 17-A M.R.S. § 101(1) (2020).

[¶13] We are unable to conclude that the court clearly erred by admitting the challenged testimony given that the parental discipline justification was raised by Pratt in her opening statement and remained at issue when that

8

testimony was admitted.[5]  The statute establishing that justification provides, in relevant part, "A parent . . . responsible for the long term general care and welfare of a child is justified in using a reasonable degree of force against that child when and to the extent that the person reasonably believes it necessary to prevent or punish the child's misconduct."  17-A M.R.S. § 106(1).  The record suggests that the court made its ruling with the understanding that both parties would be offering evidence of the "family dynamics" to address whether Pratt reasonably believed her use of force was necessary to prevent or punish her daughter's misconduct.  *See id.; see also supra* n.3.  Because the nature of the parent-child relationship could have been relevant to the reasonableness of Pratt's belief that her use of force was necessary to prevent or punish the victim's misconduct, or to explain why the victim behaved in a certain manner, the court did not clearly err in admitting this testimony over Pratt's Rule 401 objection.[6]

---

[5] However, we note that if the parental discipline justification had not been at issue, the evidence about Pratt's parenting practices would not make it any more or less probable that Pratt struck the victim or acted in self-defense, *see* M.R. Evid. 401, and would be inadmissible evidence of bad character, *see State v. Eaton*, 309 A.2d 334, 337 (Me. 1973) ("Evidence . . . is inadmissible if its sole relevancy is to establish bad character . . . on the part of the accused.").

[6] Nor can we conclude that the court committed obvious error in admitting the evidence despite the potential application of M.R. Evid. 403 because, at the time of the court's ruling, it was not plain to the court that Pratt was going to waive the parental discipline justification.  *See State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032; *State v. Pabon*, 2011 ME 100, ¶¶ 18-19, 28 A.3d 1147.

B.      Prosecutorial Misconduct

[¶14]   We review a claim of prosecutorial misconduct that was not objected to at trial for obvious error.  *State v. Bilodeau*, 2020 ME 92, ¶ 15, 237 A.3d 156; *State v. Fahnley*, 2015 ME 82, ¶ 35, 119 A.3d 727.  "To demonstrate obvious error, the defendant must show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights."  *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted).  "[A]n error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding."  *Id.* at ¶ 37 (quotation marks omitted).  "Even if these three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *Id.* at ¶ 35 (quoting *State v. Pabon*, 2011 ME 100, ¶ 29, 28 A.3d 1147).

[¶15]   Prosecutors are expected to observe "a level of ethical precision that avoids overreaching and prevents the fact-finder from convicting a person on the basis of something other than evidence presented during trial."  *Dolloff*, 2012 ME 130, ¶ 40, 58 A.3d 1032; *see also State v. Robinson*, 2016 ME 24, ¶ 23, 134 A.3d 828.  "As part of its obligation to ensure a fair trial for the defendant, the prosecution must avoid eliciting inadmissible testimony.  The failure of the

prosecutor to observe this duty is improper prosecutorial conduct." *State v. Hinds*, 485 A.2d 231, 235 (Me. 1984). In particular, we note that "[c]haracter is never an issue in a criminal prosecution unless and until the defendant brings it into the trial and makes it an issue by introducing evidence of good character and reputation. The rule is universal that the prosecution may not initially attack the defendant's character." *State v. Wyman,* 270 A.2d 460, 463 (Me. 1970).

[¶16] The State's line of questioning, in violation of the court's earlier ruling, about one of Pratt's other children "being taken out of the house" was plain error under existing law because it was designed to elicit testimony that was irrelevant, and any probative value in that testimony was outweighed by the danger of unfair prejudice. *See* M.R. Evid. 402, 403; *Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032. However, although we admonish the prosecutor for eliciting this inadmissible testimony, considering the other evidence that was admitted during trial, we cannot conclude that the court's error in failing to sua sponte step in and cut off the prosecutor's questioning "was sufficiently prejudicial to have affected the outcome of the proceeding." *Dolloff*, 2012 ME 130, ¶ 37, 58 A.3d 1032.

[¶17]  In *State v. Gaudette*, 431 A.2d 31 (Me. 1981), we vacated a judgment of conviction of assault because the defendant's trial had been unfairly tainted by inadmissible hearsay statements about the defendant's unrelated conduct toward a person other than the victim. *Id.* at 34-35.  In that case, the State improperly elicited testimony about hearsay statements made by a judge in an earlier assault case when the judge found the defendant not guilty. *Id.* at 34.  The witness, who had been the alleged victim in the earlier case, testified that the judge had found the defendant not guilty of assault but had "stated that the charge of assault did not fit what [the defendant] [had] done and should have been a lesser charge" and had "said in the courtroom [the defendant] had pushed [the witness], but the charge of assault had been too severe for what he had done, it should have been a lesser charge." *Id.* at 33 (quotation marks omitted).

[¶18]  Applying the obvious error standard, we vacated the judgment of conviction. *Id.* at 34-35.  We reasoned that "[t]he probability that the jury was improperly influenced by these hearsay statements [wa]s overwhelming because the out-of-court declarant was a judge, whose credibility the jury was unlikely to question." *Id.* at 34.

[¶19]   Here, in contrast, although the State elicited inadmissible testimony from Pratt, the jury was already aware that the victim no longer lived with Pratt, and the State's reference to the other child's removal was brief and part of a broader discussion about Pratt's discipline style and methods of parenting that Pratt herself had placed in issue.   Thus, although there was prosecutorial misconduct resulting in the admission of evidence that should have been excluded, we cannot conclude on this record that the error was so prejudicial that it affected the outcome of the proceeding, especially given the properly admitted evidence offered to establish each element of the crime and disprove the self-defense justification.  *Cf. State v. Collin*, 441 A.2d 693, 696-97 (Me. 1982) (noting that although the prosecutor's attempt to introduce inadmissible hearsay was improper, the conduct was not so prejudicial as to set aside the conviction for drunk driving because the jury was presented with additional evidence of the defendant's intoxication).

The entry is:
Judgment affirmed.

Tina Heather Nadeau, Esq., The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant Meggan M. Pratt

Todd R. Collins, District Attorney, and Matthew A. Hunter, Asst. Dist. Atty., Prosecutorial District 8, Houlton, for appellee State of Maine

Aroostook County Unified Criminal Docket docket number CR-2019-30353
FOR CLERK REFERENCE ONLY