MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2021 ME 22
Docket:       Han-20-119
Argued:       February 9, 2021
Decided:      April 15, 2021

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

BENJAMIN H. HODGDON II

v.

STATE OF MAINE

HORTON, J.

[¶1]  Benjamin H. Hodgdon II appeals from a judgment entered by the Superior Court (Hancock County, *R. Murray, J.*) denying, in part, his petition for post-conviction review of his conviction on several sexual assault charges. Hodgdon contends that the court should have granted his petition in all respects because his attorney furnished ineffective assistance during his trial. Because we agree that Hodgdon was deprived of his right to the effective assistance of trial counsel, we vacate the judgment and remand for entry of a judgment granting his petition in full.

2

## I. BACKGROUND

A.    Trial and Direct Appeal Proceedings

[¶2]  In April 2014, Hodgdon was charged in an eight-count indictment with four counts of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B) (Supp. 2000) (Counts 1, 3, 4, and 5); two counts of unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C) (Supp. 2000) (Counts 2 and 6); and two counts of sexual abuse of a minor (Class C), 17-A M.R.S.A. § 254(1)(A), (3)(A) (Supp. 2000) (Counts 7 and 8).[1]   All of the charges alleged criminal acts occurring in 1999 and 2000.  The charges of gross sexual assault and unlawful sexual contact (Counts 1 through 6) alleged acts committed before the alleged victim turned fourteen years old.

[¶3]  The trial court (Hancock County, *R. Murray, J.*) held a three-day jury trial in March 2016.  Before any evidence was presented, Hodgdon moved in limine to exclude a recording of a conversation between Hodgdon and the alleged victim that the alleged victim had created on her cell phone and provided to the police.  The court ruled that the recording itself and "any

---

[1] Sections 253(1)(B) and 254(1)(A) of Title 17-A have since been amended, *see* P.L. 2001, ch. 383, §§ 21, 156 (effective Jan. 31, 2003); P.L. 2003, ch. 711, § B-2 (effective July 30, 2004), and section 255 has been repealed and replaced, *see* P.L. 2001, ch. 383, §§ 22-23, 156 (effective Jan. 31, 2003).  None of these changes affects the analysis here.

reference to the fact that a recording was made or attempted" would be inadmissible at trial.

[¶4] The alleged victim was the State's first witness. She testified that during the three years that she was in middle school, Hodgdon was her teacher, cross-country coach, and tutor, and that he also employed her (as a babysitter and landscaper) outside of school. She testified that Hodgdon subjected her to sexual acts at least thirty to forty times before she graduated from middle school, including at his house, before and after school in his classroom, at landscaping job sites, in his vehicle in the school parking lot after school, and at his parents' house.

[¶5] Hodgdon's trial counsel began his cross-examination by asking the alleged victim about a police detective's interview of her in 2013 and seeking to introduce in evidence a transcript and audio recording of that interview. The State objected to the admission of the entire transcript and recording. Trial counsel stated that he wanted to highlight inconsistencies between the alleged victim's statements to the detective in that interview and her trial testimony and argued that it was "imperative" that the jury read and hear the entire police interview. The court suggested waiting to see how the cross-examination developed before deciding whether the exhibits would be admitted, and trial

counsel agreed with that approach. Trial counsel then questioned the alleged victim, referring to various elements of the interview in an attempt to suggest that her trial testimony differed from what she had initially told the police. He then again sought admission of the entire, unredacted transcript and recording. The State did not object, and the court admitted the exhibits.

[¶6] Several other witnesses testified during the trial, including a "first complaint" witness, *see, e.g.*, *State v. Fahnley*, 2015 ME 82, ¶¶ 15-26, 119 A.3d 727, Hodgdon, and several school employees and community members. The State did not present any physical or corroborative eyewitness evidence; its case-in-chief was entirely based on the alleged victim's testimony that Hodgdon had assaulted her. Hodgdon's counsel did not request a "specific unanimity" jury instruction, *see, e.g.*, *State v. Hanscom*, 2016 ME 184, ¶¶ 11-14, 16, 152 A.3d 632, and the court did not provide one. The jury found Hodgdon guilty of one count of gross sexual assault (Count 5), one count of unlawful sexual contact (Count 6), and one count of sexual abuse of a minor (Count 7). The court later sentenced Hodgdon on the count of gross sexual assault to eleven years in prison, with all but three and one-half years

suspended, and six years of probation.[2]  Hodgdon appealed, and we affirmed the judgment of conviction.[3]  *See State v. Hodgdon*, 2017 ME 122, ¶¶ 1, 26, 164 A.3d 959.

B.     Post-Conviction Review Proceedings

[¶7]   Hodgdon then filed a petition for post-conviction review in the Superior Court (Hancock County).  *See* 15 M.R.S. §§ 2123, 2129 (2021).  He argued, among other things, that he had been deprived of his right to the effective assistance of counsel based on (1) trial counsel's introduction in evidence of the recording and transcript of the entirety of the alleged victim's police interview and (2) trial counsel's failure to request jury instructions concerning specific unanimity.  The post-conviction court (*R. Murray, J.*) held an evidentiary hearing.  Trial counsel was unavailable to testify because he had died before the hearing took place.  The evidence admitted included the

---

[2]  On the counts of unlawful sexual contact and sexual abuse of a minor (Counts 6 and 7), which are not at issue in this appeal, *see infra* ¶ 8, the court imposed concurrent three-year terms of imprisonment.

[3]  In his direct appeal, Hodgdon argued that (1) the court did not sufficiently instruct the jury that it needed to find that the alleged victim was less than fourteen years old to find him guilty of Counts 5 and 6, (2) the breadth of time encompassed by the indictment exposed him to double jeopardy, and (3) there was insufficient evidence for the jury to find that he had assaulted the alleged victim before she turned fourteen. *State v. Hodgdon*, 2017 ME 122, ¶ 10, 164 A.3d 959. He also argued that the trial court (*Mallonee, J.*) should have granted his pretrial motion to dismiss the indictment based on the State's failure to preserve the alleged victim's cell phone. *Id.* ¶ 10 n.5.

6

relevant trial transcripts and exhibits;[4] trial counsel's entire file, which contained copies of communications from trial counsel to Hodgdon; and the testimony of Hodgdon's expert witness, who opined that trial counsel's conduct constituted ineffective assistance of counsel.

[¶8] In March 2020, the court granted Hodgdon's petition as to the convictions for unlawful sexual contact and sexual abuse of a minor (Counts 6 and 7), determining that trial counsel's failure to request specific unanimity instructions concerning those charges amounted to ineffective assistance of counsel. The court therefore vacated Hodgdon's convictions on those counts, such that only the conviction for gross sexual assault (Count 5) remained. The court found that a specific unanimity instruction was unnecessary for that charge because the trial record contained evidence of only one incident that could have formed the basis for the jury's finding of guilt.

[¶9] The court also determined that trial counsel's decision to introduce the transcript and recording of the alleged victim's police interview was part of a trial strategy that "fell within the wide range of reasonable professional assistance." (Quotation marks omitted.) Concluding that none of Hodgdon's

---

[4] The post-conviction record included the transcript of the alleged victim's police interview that had been admitted during the trial, but not the recording. With the agreement of the parties, we ordered that the recording be added to the record on appeal.

other arguments merited relief, the court denied Hodgdon's petition as to the conviction for gross sexual assault (Count 5).

[¶10]  One month later, in April 2020, we decided *Watson v. State*, in which we concluded that trial counsel's introduction of a recording of an alleged crime victim's interview with police constituted ineffective assistance of counsel.  2020 ME 51, ¶¶ 19-39, 230 A.3d 6.  Based on *Watson*, Hodgdon asked the post-conviction court to reconsider its decision in this case.  The court denied his motion.  We then granted Hodgdon's request for a certificate of probable cause to proceed with this appeal.  *See* 15 M.R.S. § 2131(1) (2021); M.R. App. P. 19(a)(2)(F), (f).

## II. DISCUSSION

[¶11]  "[A] criminal defendant is entitled to receive the effective assistance of an attorney." *McGowan v. State*, 2006 ME 16, ¶ 9, 894 A.2d 493; *see* U.S. Const. amend. VI; Me. Const. art. I, § 6.  "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) 'that counsel's representation fell below an objective standard of reasonableness' and (2) that the 'errors of counsel . . . actually had an adverse effect on the defense.'" *Ford v. State*, 2019 ME 47, ¶ 11, 205 A.3d 896 (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).

[¶12]  In determining whether the petitioner has met his burden on the performance prong of this test—that counsel's representation was deficient—a court affords trial counsel's strategic decisions significant deference.  *See, e.g.*, *Middleton v. State*, 2015 ME 164, ¶ 13, 129 A.3d 962.  But notwithstanding "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," *id.* (quotation marks omitted), "[a] determination that defense counsel's choices amount to trial strategy does not automatically insulate them from review," *Watson*, 2020 ME 51, ¶ 20, 230 A.3d 6 (quotation marks omitted).  Ultimately, "counsel's representation of a defendant falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney."  *Philbrook v. State*, 2017 ME 162, ¶ 7, 167 A.3d 1266 (quotation marks omitted).  To establish prejudice—that counsel's errors had an adverse effect on the defense—a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694; *see Watson*, 2020 ME 51, ¶ 29, 230 A.3d 6.

[¶13] We "review a post-conviction court's legal conclusions de novo and its factual findings for clear error." *Fortune v. State*, 2017 ME 61, ¶ 12, 158 A.3d 512. "[B]oth prongs of the *Strickland* analysis often present mixed questions of law and fact . . . ." *Id.* We "apply the most appropriate standard of review for the issue raised depending on the extent to which that issue is dominated by fact or by law." *Id.* ¶ 13. "Because a petitioner bears the burden of proof at the post-conviction hearing, we will not disturb the court's determination that the petitioner failed to satisfy his burden unless the evidence compelled the court to find to the contrary." *Philbrook*, 2017 ME 162, ¶ 9, 167 A.3d 1266 (alteration omitted) (quotation marks omitted). Where the court has stated findings and the petitioner has not moved for further findings, "we will infer that the court found all the facts necessary to support its judgment if those inferred findings are supportable by evidence in the record." *Id.* (quotation marks omitted).

[¶14] We focus here on trial counsel's introduction of the transcript and recording of the alleged victim's police interview.[5] We addressed a similar

---

[5] We note, for the benefit of the court and the parties, our conclusion that the post-conviction court erred when it found that Hodgdon was not entitled to a specific unanimity instruction concerning Count 5. Resolving the issue involves examining the totality of the trial evidence—not just the evidence on which the State or the defendant seemed most focused—in the context of the elements of the charge at issue. *See State v. Reynolds*, 2018 ME 124, ¶ 15, 193 A.3d 168; *State v. Hanscom*, 2016 ME 184, ¶ 11, 152 A.3d 632; *State v. Fortune*, 2011 ME 125, ¶ 31, 34 A.3d 1115. A specific unanimity instruction explains to jurors the requirement of "unanimous agreement among

10

issue recently in *Watson*, 2020 ME 51, ¶¶ 19-39, 230 A.3d 6. There, just before resting the defense case, and without providing any context, trial counsel played a video recording of the ten-year-old alleged victim's police interview and introduced a transcript of the interview in evidence for the jury. *Id.* ¶¶ 1, 7-8. The description of the sexual abuse that the alleged victim gave during the police interview was consistent with her trial testimony, but she made an additional comment to the detective that could have been interpreted as suggesting a motive to fabricate the allegations in order to manipulate a

---

the[m] that a single incident of [the alleged crime] occurred" to support a finding of guilt on a given count. *Hanscom*, 2016 ME 184, ¶ 11, 152 A.3d 632; *see Reynolds*, 2018 ME 124, ¶ 15, 193 A.3d 168 ("[W]hen separate but similar incidents are the evidence supporting a single charge, the jury must unanimously find that one specific incident occurred." (quotation marks omitted)). "On request, the jury should be instructed on this point, if the evidence offered in support of one charge includes more than one incident of the charged offense." *Fortune*, 2011 ME 125, ¶ 31, 34 A.3d 1115.

Here, a guilty verdict on Count 5 required proof that Hodgdon had engaged in a sexual act with a person who was under fourteen years old and not his spouse. *See* 17-A M.R.S.A. § 253(1)(B) (Supp. 2000). The court found that the record contained evidence of only one incident that met those elements: "the incident described as having occurred at [Hodgdon's home] while the victim was purportedly there babysitting [Hodgdon's] children." Although the evidence describing that incident was sufficient to support a finding of guilt on Count 5, *Hodgdon*, 2017 ME 122, ¶¶ 21-26, 164 A.3d 959, the trial record contained evidence of other instances that would have been sufficient as well.

For example, the jury heard evidence that (1) Hodgdon coached cross-country during the fall of the alleged victim's eighth-grade year; (2) Hodgdon "had sex" with the alleged victim in his vehicle after cross-country practice; and (3) the alleged victim turned fourteen on March 16, 2000, during the spring of her eighth-grade year. From this evidence, the jury could rationally infer that Hodgdon subjected the alleged victim to a sexual act in his vehicle after cross-country practice during the fall of 1999—before the alleged victim turned fourteen. Hodgdon was, therefore, entitled to a specific unanimity jury instruction concerning Count 5. *See Fortune*, 2011 ME 125, ¶ 31, 34 A.3d 1115. Given our conclusion in this appeal, however, we need not reach the issue of whether trial counsel's failure to request the instruction constituted ineffective assistance of counsel.

custody dispute.[6]  *Id.* ¶¶ 8, 12.  Trial counsel's goal was to suggest that the State's investigation was incomplete or inadequate as part of an overall "strategy of undermining the victim's credibility by showing that she fabricated the allegations."  *Id.* ¶ 23.  The question, therefore, was "whether trial counsel's decision to play the entire video interview for the purpose of showing the victim's motive to fabricate the allegations and undermine her credibility was a reasonable trial strategy."  *Id.*

[¶15]  We concluded that trial counsel's decision was both unnecessary and unreasonable: "It may have been a sound strategy to argue that the victim had a motive to fabricate because of the custody issue and that the detective's interview was too short, but these issues could have been raised and argued without playing the entire video interview."  *Id.* ¶ 24.  In the context of a "he said/she said" case, playing the recorded interview for the jury simply served to bolster the alleged victim's credibility by providing the jury with her earlier, consistent description of the assaults.  *Id.* ¶ 25.

[¶16]  Here, in its initial order denying Hodgdon's petition, the post-conviction court stated that trial counsel's strategy was to "lay everything on the table with the expectation that the jury would find [Hodgdon], and

---

[6]  The alleged victim could "be seen and heard on the video stating, 'So, I won't get taken away from my grandparents?'" after disclosing the assault.  *Watson v. State*, 2020 ME 51, ¶ 8, 230 A.3d 6.

12

[Hodgdon's] version of events, more credible than the victim and her version." The court relied on trial counsel's assertions, made during closing argument and in a post-trial letter to Hodgdon, that the alleged victim's statements during the police interview were internally inconsistent and inconsistent with her trial testimony and that her allegations were patently incredible. Addressing Hodgdon's argument that trial counsel could have accomplished his goal of highlighting inconsistencies without introducing the exhibits, the court stated: "This is certainly true, and if trial counsel's sole purpose was limited to presenting one or more of the victim's inconsistent statements, introduction of the entire transcript or recording of the victim's earlier statement would be questionable." The court reasoned, however, that trial counsel's actions were "meant to accomplish more, as articulated in his closing argument [to the trial jury] as set forth above."

[¶17] In its order denying reconsideration, the court stated that trial counsel's "purpose for introducing the victim's interview evidence in this case was to establish the inconsistency between the interview and her trial testimony. This rationale was specifically articulated by trial counsel in his closing argument to the jury when he noted that the victim's interview statement . . . (1) [was] internally inconsistent; (2) was inconsistent with the

testimony the victim presented at trial; and (3) . . . presented a strikingly incredible story, and thereby challeng[ed] the reliability of the victim's testimony."[7] (Emphasis omitted).

[¶18] The finding that trial counsel's goal was "to establish the inconsistency between the [alleged victim's] interview and her trial testimony" is supported by the evidence in the post-conviction record. The question, then, is whether introducing the entire transcript and recording in evidence in order to accomplish that goal was a reasonable trial strategy. *See id.* ¶ 23. The record compels a determination that it was not.

[¶19] The alleged victim's description of the assaults to the detective was, overall, consistent with her trial testimony. She told the detective that

---

[7] Trial counsel's statement during his closing argument to the jury, as quoted by the post-conviction court, was as follows:

> As you will know when you read this document, it is internally inconsistent. And I will leave that out there. You will determine that for yourself. . . . The second thing that is striking is that this 54 page document was not the allegation that we heard two days ago on the stand. . . . The third thing that is striking is that the story that is laid out is just incredible, okay? . . . Another indicia of reliability is, is what's being said patently provable to be false by other evidence. You can read it for yourself.

In the post-trial letter to Hodgdon, trial counsel wrote, similarly,

> Essentially, our fundamental trial strategy was to tie [the alleged victim] to her August 1, 2013 statement (which, as discussed, I actually provided to the jury, albeit notwithstanding some risk) and then to challenge that statement as internally inconsistent, as subject to subsequent elaboration and expansion (and therefore inconsistent), as essentially incredible (especially with regard to allegations of sexual contact at the school—in the modular classroom, in interior classrooms and in your truck in the school parking lot)—and as motivated for fabrication.

14

Hodgdon had cultivated a relationship with her while she was in middle school that progressed eventually to physical contact and sexual acts. She talked about being eleven, twelve, and thirteen years old, and in middle school, when the sexual acts took place. She said that Hodgdon subjected her to sexual acts "anytime that he could get [her] all by [her]self with him," that the sexual acts occurred "a lot of times in school before school would start," that they occurred "a handful of times" at the school, that they occurred "as much as possible" until she graduated from middle school, and that they were "pretty common" for two to three years after the first few times. This description tracked the alleged victim's testimony at trial, tending to support her credibility rather than undermine it.

[¶20] Trial counsel did attempt to highlight inconsistencies during his cross-examination of the alleged victim.[8] But even assuming that the interview provided fodder for trial counsel to impeach the alleged victim's credibility

---

[8] The inconsistencies that trial counsel focused on were, in large part, rebutted by subsequent testimony given by the alleged victim and the detective in ways that would have been unsurprising to trial counsel given the transcript of the interview. For example, trial counsel focused on the difference between the alleged victim's statement during the interview that Hodgdon subjected her to sexual acts "a handful of times" and her trial testimony that he had done so at least thirty to forty times. The alleged victim later testified that, as was evident from the transcript and recording of her interview, her use of the phrase "a handful of times" was in response to a question about the number of times that Hodgdon had subjected her to sexual acts *at school*. She had also told the detective during the interview that the assaults happened any time that Hodgdon could get her alone, "a lot of times," "as much as possible," and "pretty common[ly]."

through cross-examination, the record provides no possible basis for trial counsel to conclude that it was *also* necessary for the jury to read and listen to the entire interview.[9]  Indeed, trial counsel himself acknowledged that more than half of the transcript contained statements that were *consistent* with the alleged victim's trial testimony.

[¶21]  Trial counsel's decision is particularly perplexing because the exhibits contained an array of additional, otherwise inadmissible evidence that could only have been prejudicial to Hodgdon's defense.  For example, during the interview with the detective, the alleged victim referred—multiple times— to "something" that happened with "other young females" or "another female . . . before [the alleged victim]."  She stated that the school knew about "something that happened with another girl," "asked [Hodgdon] to get help," and "sent him away to get help somewhere."  She noted that one of these other victims, whom she identified by name, would have been in eighth grade when "something" happened.  She stated that Hodgdon was ultimately fired from his

---

[9] One of the primary grounds provided to the court by trial counsel was to suggest that the alleged victim had mentioned Hodgdon's giving her drugs for the first time at trial.  On redirect, however, after having her memory refreshed with a report describing a different interview with the detective, the alleged victim testified that she *had* mentioned the drugs to the detective before the trial.  The detective also testified that the alleged victim's trial testimony had not included any new information. In any case, introducing the unredacted exhibits to show that the alleged victim failed to discuss drugs with the detective in a particular conversation was entirely unjustified given the likely impact of the otherwise inadmissible information they contained.  *See infra* ¶¶ 21-23.

teaching position after he engaged in a public display of affection with a different former student, and that he admitted failing to "see the boundaries with" that former student. She referred to Hodgdon having a "mental breakdown" after his separation from his first ex-wife and to his having "tremors" and taking "antidepressants and medications." She also referred, several times, to the recording that she "got of" Hodgdon on her cell phone; the exhibits therefore included evidence—a "reference to the fact that a recording was made or attempted"—that the court had specifically excluded upon Hodgdon's motion in limine.

[¶22]  As in *Watson*, the decision to introduce the entire transcript and recording in this case was not only unnecessary, it was unreasonable. *See id.* ¶¶ 24-25.  It placed the alleged victim's numerous prior *consistent* statements in the hands of the jurors during deliberations, and the State capitalized on the opportunity to focus on those consistencies.  It also led to the introduction of otherwise inadmissible evidence—to the effect that Hodgdon had engaged in a pattern of sexual predation upon students that resulted in his losing his job—that was extremely damaging to the defense.  *See State v. Triolo*, No. 2012AP2806-CR, 2013 Wisc. App. LEXIS 971, at *2, *10, *13 (Wis. Ct. App. Nov. 19, 2013) (concluding that trial counsel's performance was deficient

where he failed to object to the admission of a recording of a sexual assault victim's police interview that included a reference to a separate assault against another person). In short, there was nothing to be gained—and much to be lost—by submitting the exhibits to the jury. Although a strategy of discrediting the alleged victim by highlighting inconsistencies that arose based on the interview may have been reasonable, the record compels a determination that the method by which defense counsel implemented that strategy fell "below what might be expected from an ordinary fallible attorney," *Philbrook*, 2017 ME 162, ¶ 7, 167 A.3d 1266 (quotation marks omitted).

[¶23] We also conclude that trial counsel's deficient performance caused actual prejudice to Hodgdon as a matter of law. *See Watson*, 2020 ME 51, ¶¶ 29, 31, 230 A.3d 6. As in *Watson*, the State's case hinged entirely on the alleged victim's testimony—there were no witnesses to the alleged abuse, and there was no corroborating physical evidence. *See id.* ¶¶ 33-36. In this "he said/she said" case, the alleged victim's credibility was "the focus of the defense and a central issue" at trial,[10] and counsel's choice served to bolster her

---

[10] Trial counsel urged the jury to view the case in that way, stating during his opening statement that it was "the most barest and unadorned version of a he said, she said case that you will ever see," and, during his closing argument, that "[i]t is unavoidably true here, ladies and gentlemen, that both people cannot be telling the truth. All right? Someone is lying. Both stories cannot be true. . . . [N]o one was there to know who's telling the truth and who's lying."

credibility. *Id.* ¶ 36 (quotation marks omitted). Given that trial counsel's introduction of the entire, unredacted transcript and recording also gratuitously exposed the jury to a panoply of severely prejudicial evidence, we must conclude that the error "undermine[s] confidence in the outcome," *Strickland*, 466 U.S. at 694.

[¶24]  We decline, however, to announce a per se rule that a defense attorney's introduction of the entirety of an alleged victim's pretrial statement will, in all cases, constitute deficient representation. Reviewing courts must continue to evaluate each case based on the particular circumstances presented by the trial record, and we cannot conclude that there are no conceivable circumstances in which such a decision could constitute a reasonable trial strategy. *See, e.g.*, *id.* at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). Before making that choice, however, trial counsel should always consider alternatives— including cross-examining the witness on selected portions of the prior statement; seeking to admit redacted portions in evidence if necessary; and, where a legitimate goal is to prove that certain topics were not addressed in the

prior statement, asking a witness who has reviewed the entire transcript or recording to confirm that fact.

## III. CONCLUSION

[¶25]  The record compels a determination that, in the context of this case, trial counsel's decision reflected representation that fell "below what might be expected from an ordinary fallible attorney," *Philbrook*, 2017 ME 162, ¶ 7, 167 A.3d 1266.  Because there is a reasonable probability that counsel's error altered the result at trial, *see Strickland*, 466 U.S. at 694, Hodgdon is entitled to post-conviction relief from the sole remaining portion of the judgment of conviction.

The entry is:

> Judgment vacated.  Remanded for entry of a judgment granting Hodgdon's petition for post-conviction review and vacating the remaining conviction (Count 5) of the underlying criminal judgment.

Jeremy Pratt, Esq. (orally), and Ellen Simmons, Esq., Camden, for appellant Benjamin H. Hodgdon II

Matthew J. Foster, District Attorney, and Eden S. Stuart, Asst. Dist. Atty. (orally), Prosecutorial District No. VII, Ellsworth, for appellee State of Maine

Hancock County Unified Criminal Docket docket number CR-2017-1204
FOR CLERK REFERENCE ONLY