STATE OF MAINE                          SUPERIOR COURT
AROOSTOOK, ss                           DOCKET NO. CR-21-30059


MEGGAN PRATT                    )
                Petitioner      )
                                )
                                )
                                )
vs                              )        DECISION
                                )
                                )
                                )
STATE OF MAINE                  )
                Respondent      )


## INTRODUCTION

Pending before the court is Meggan Pratt's (hereafter "Petitioner") Petition for Post-Conviction Review. Hearing on the petition was held on April 8, 2022. Testimony was received from Attorney Richard Rhoda and Attorney Jeremy Pratt. The court admitted Petitioner's Exhibits PX1 through PX12 into evidence, without objection. The record also includes, and the court has considered, the docket sheets and file contents of the underlying criminal charge, the transcript of trial proceedings, and the appellate decision at *State v. Pratt*, 2020 ME 141. The parties were permitted to file post-hearing briefs in accordance with M.R.Un.Crim.P. 73(c). After consideration of the record presented and the arguments of counsel, the court finds and orders as follows:

## ISSUES IDENTIFIED

By complaint dated June 12, 2019, Petitioner was charged with having committed on or about May 25, 2019 the offense of domestic violence assault against "MP". A jury trial was held on November 15, 2019. The evidence at trial reflected that MP was the child of Petitioner.

1

Petitioner raised the issue of self-defense during the trial. The jury was instructed on the elements of self-defense. The jury returned a verdict of guilty to domestic violence assault, and Petitioner was sentenced to 60 days with all of that time suspended and probation for a period of 1 year, along with a $300.00 fine.

In her initial petition dated January 26, 2021, Petitioner alleges ineffective assistance of counsel in that counsel failed to investigate the case, prepare her to testify at trial, did not understand applicable law, and did not make appropriate objections. By way of her amended petition dated May 3, 2021, Petitioner alleges that her counsel failed to provide effective assistance by: a) opening the door to testimony and argument about Petitioner's parenting; b) failing to object or seek redress for the prosecutorial misconduct; and c) neglecting to call MP's eye doctor and the woman who helped MP select eyeglasses as witnesses.

## STANDARD OF REVIEW

Claims of ineffective assistance of counsel raised on post-conviction review are governed by the two-part test outlined in *Strickland v. Washington,* 466 U.S. 668 (1984). Applying that test, a petitioner bears the burden, at the post-conviction trial, of proving the following: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation resulted in prejudice. *Philbrook v. State,* 2017 ME 162, ¶ 6. The second prong of the test is also described as whether errors of counsel actually had an adverse effect on the defense. *Fahnley v. State,* 2018 ME 92, ¶17; *Hodgdon v. State,* 2021 ME 22, ¶11.

As to the first prong of the test, counsel's representation falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney. "Judicial inquiry into the effectiveness of representation is 'highly deferential.' . . . '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

2

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Watson v. State*, 2020 ME 51, P20, 230 A.3d 6, 12 (Quoting, *Middleton v. State*, 2015 ME 164, ¶ 13, 129 A.3d 962 (quoting *Strickland*, 466 U.S. at 689)). The court is mindful that trials play out in real time and the post-conviction court "must make every effort to eliminate the distorting effects of hindsight." *Philbrook v. State,* 2017 ME 162, ¶ 6.

In order to prove that counsel's performance was constitutionally deficient,

"a defendant must show that counsel's representation fell below an objective standard of reasonableness. The question is whether the counsel's performance fell within the wide range of reasonable professional assistance that a competent criminal defense counsel could provide under prevailing professional norms. The *Strickland* test compels us to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective *at the time.*" (Internal citations and punctuation omitted.)

*Meggans v. State of Maine*, 2014 ME 125, ¶23,103 A.3d 1031,1039 (Emphasis added).

As to the second part of the Strickland test, "to establish prejudice—that counsel's errors had an adverse effect on the defense—a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland,* 466 U.S. at 694; *see Watson,* 2020 ME 51, ¶ 29, 230 A.3d 6." *Hodgdon v. State*, 2021 ME 22, P12, 249 A.3d 132, 136.

## DISCUSSION

Petitioner advances two challenges to trial counsel's conduct that she contends fall below an objective standard of reasonableness: (1) raising a parental-discipline justification defense and (2) failing to object to three instances of prosecutorial misconduct. Regarding the other matters raised in her pleadings, Petitioner has failed to produce any credible evidence or develop any

3

argument related thereto. Therefore, the court will address each challenge advanced by the Petitioner in turn.

*Parental-discipline Justification*

A defendant's choice of whether or not to testify rests solely with the defendant. A defendant does not have to make that decision until the State has rested. Accordingly, although trial counsel may have a belief as to whether or not the defendant will testify at the outset of the trial, until the decision has finally been made by a defendant, there is no certainty. Even if there were a high probability of that decision in the mind of trial counsel, based upon representations by the defendant which was *not shown* here, there is still a level of uncertainty. As of the time of the opening statement in the Petitioner's trial, it was unknown for certain whether the defendant would testify.

In order to generate a defense for the jury's consideration, the court must determine whether the evidence would have allowed the jury to find facts to make the defense a "reasonable hypothesis." *State v. Gagnier*, 2015 ME 115, P13, 123 A.3d 207, 211 (*Quoting, State v. Doyon*, 1999 ME 185, P 7, 745 A.2d 365). Based upon the State's case in chief which consisted only of the testimony of MP, a defense of self-defense was not a reasonable hypothesis. *See, Trial Transcript Page 42, Lines 16-20*. However, based upon the testimony of MP, a defense of parental-discipline justification was a reasonable hypothesis. The genesis of the dispute between MP and Petitioner related to a haircut. MP exhibited a failure to comply with Petitioner's instructions in that regard and she was "crying because I knew I was going to get in trouble. . . . for telling my mother no." *See, Trial Transcript Page 42, Lines 20-25*.

Had the Petitioner elected not to testify, the only viable defense of the two presented during her opening statement would have been a defense based upon the parental-discipline justification.

4

A reasonable trial strategy might very well have been to focus on what the jury could have found to be insolent behavior of the child as well as the child's intentional disrespect of the Petitioner, based upon the child's testimony. *See, Id.; Trial Transcript Page 32, Lines 8-17.* Even after knowing she was going to be in trouble for her misbehavior, including talking back to her mother, the child dialed it up a notch by insulting her mother. *See, Trial Transcript Page 32, Lines 16-17.* The jury could reasonably have found that the Petitioner's slap in response to the child's insult to be for the purpose of exercising parental control related to the misbehavior. *1 Maine Jury Instruction Manual § 6-59 (2022).*

There is also potential overlap related to the two defenses at issue in this matter when a defendant is the parent of the alleged victim. A person is justified in using a reasonable degree of force upon another person in order to defend herself from what she reasonably believes to be the imminent use of force by that other person, and she may use a degree of force which she reasonably believes to be necessary considering the circumstances. *1 Maine Jury Instruction Manual § 6-58 (2022).* If there was evidence that MP attacked the Petitioner, the defense of self-defense would apply. Under those same circumstances, a parent may use a reasonable degree of physical force that a parent reasonably believes is necessary to control the child's misconduct, provided the force does not cause physical injury greater than transient pain and/or minor temporary marks. *1 Maine Jury Instruction Manual § 6-59 (2022).* If attacking or attempting to attack a parent is not misconduct, the court struggles to find what would be.

The Petitioner has failed to produce sufficient credible evidence for the court to find that counsel's representation fell below an objective standard of reasonableness related to raising both self-defense and parental-discipline justification defense in the opening statement. The Petitioner has failed to produce sufficient credible evidence for the court to find that counsel's representation

5

fell below an objective standard of reasonableness related to the admission and development of testimony regarding the parenting dynamics in Petitioner's home during the State's case. Further, the Petitioner has failed to show that the decision regarding the opening statement or the parental-discipline justification undermines confidence in the outcome of the case and renders that outcome unreliable. *Theriault v. State*, 2015 ME 137, ¶¶19, 20, 125 A.3d 1163, 1170("...the result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome").

### Prosecutorial Misconduct

The Law Court has determined that the "State's line of questioning, in violation of the court's earlier ruling, about one of [Petitioner's] other children 'being taken out of the house' was plain error under existing law because it was designed to elicit testimony that was irrelevant, and any probative value in that testimony was outweighed by the danger of unfair prejudice." *State v. Pratt*, 2020 ME 141, P16, 243 A.3d 469, 474. As of the time of the improper questions, the trial had taken a turn with the Petitioner's decision to testify and her testimony claiming that her slap of MP was in self-defense. As of that time, the questions regarding her child with autism being taken out of the house should have generated an objection. Even if trial counsel elected not to lodge additional objections related to this information due to sensitivity to the jury's perception of excessive objections, trial counsel could have requested a sidebar conference to address the issue. The Petitioner has shown that counsel's representation in failing to object to that line of questioning fell below an objective standard of reasonableness.

Moving on to the second part of the Strickland test, "a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome.' *Strickland*, 466 U.S. at 694; *see Watson*, 2020 ME 51, ¶ 29, 230 A.3d 6." *Hodgdon v. State*, 2021 ME 22, P12, 249 A.3d 132, 136. The "taken out of the house" comment was followed by a response by Petitioner of "on a technicality, you are accurate". *Trial Transcript Page 82, Lines 24-25*. There was no follow up regarding the "technicality" or about the circumstances regarding the removal. This was included with questions regarding diapering and home schooling that clearly were irrelevant, although not clearly damaging to the Petitioner particularly in light of Petitioner's testimony that the child had special needs. The testimony was vague and brief. It was immediately followed by a return to the specifics regarding the scuffle between petitioner and MP which was the obvious focus of the case.

There was no dispute at trial that there was a physical altercation between Petitioner and MP. In addition, there were photographs admitted into evidence that showed the injury sustained by MP. The jury had an opportunity to assess the credibility of the evidence, including the attitude and lack of respect exhibited by the comments of MP surrounding the incident. Much of the testimony raised by Petitioner related to periods in the trial prior to Petitioner's decision to testify and thus before it was apparent that the focus would be on self-defense rather than parental-discipline justification. The court finds that the testimony called into question was just as likely to show bias on the part of MP due to her anger with her mother as it was to reflect negatively on the Petitioner.

In the broader context of the entire trial, the court finds that the Petitioner has failed to meet her burden of establishing that: (1) counsel's representation fell below an objective standard of reasonableness as to the parental-discipline justification comment in the opening statement and the evidence related thereto at trial, and (2) the deficient representation regarding the failure to properly lodge objections resulted in prejudice. *Philbrook v. State*, 2017 ME 162, ¶ 6.

7

The entry is:

    Petitioner Meggan Pratt's petition for post-conviction relief is DENIED.

Dated: ____6/14____, 2022

Justice, Superior Court

8