MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:     2023 ME 66
Docket:       Aro-22-218
Argued:       June 8, 2023
Decided:      November 2, 2023

Panel:        STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

MEGGAN M. PRATT

v.

STATE OF MAINE

LAWRENCE, J.

[¶1]   Meggan M. Pratt appeals from the judgment of the trial court (Aroostook County, *Nelson, J.*) denying her petition for post-conviction review (PCR).  Pratt argues that the PCR court erred by finding that trial counsel's representation did not fall below the objective standard of reasonableness and concluding that trial counsel's errors did not actually have an adverse effect on her defense.  We agree with Pratt's contentions and vacate the judgment.  We remand to the PCR court with directions to vacate Pratt's conviction in the underlying criminal judgment.

## I.  BACKGROUND

[¶2]  We briefly recite the factual and procedural background from our decision in Pratt's direct appeal from the judgment of conviction of domestic

2

violence assault against her daughter, *see State v. Pratt*, 2020 ME 141, 243 A.3d 469, and include additional background taken from the jury trial and post-conviction review records.

## A.    Jury Trial

[¶3]  In Pratt's direct appeal, we determined that, viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt:

> Over Memorial Day weekend in 2019, Pratt and the victim had an argument because Pratt wanted to cut the victim's hair and the victim would not allow it.  Pratt picked up a pair of scissors and moved toward the victim with them in her hand.  The victim attempted to grab the scissors from Pratt, and the two struggled briefly until the victim eventually let go.  Pratt then left to run an errand.

> Pratt returned approximately ten minutes later and told the victim that she would be punished for disobeying her mother.  The victim said to Pratt, "You aren't even a mother to us."  Pratt grabbed the victim by her arms, held her firmly, and said that she fed and clothed her and "that's all a mother is supposed to do."  Pratt then smacked the victim's face with her right hand, leaving a bruise above the victim's left eye that persisted for several days.  The victim hit Pratt in return, and the two "struggled for a bit" until Pratt pinned the victim to the ground. Pratt did not allow the victim to get up until the victim calmed down.

*Id.* ¶¶ 3-4 (alterations omitted).

[¶4]  On June 12, 2019, the State charged Pratt with domestic violence assault (Class D), *see* 17-A M.R.S. § 207-A(1)(A) (2018),[1] and the trial court (Aroostook County, *Nelson, J.*) held a jury trial on November 15, 2019.  *Pratt*, 2020 ME 141, ¶¶ 1, 5, 243 A.3d 469.  During opening statements, the State introduced the parental discipline justification to the jury as a potential defense.[2]  *See generally* 17-A M.R.S. § 106(1) (2023).  Pratt responded in her opening statement by "introduc[ing] the issue of 'family dynamics' and the idea that parents are legally justified in using reasonable and moderate forms of punishment against their children."[3]  *Pratt*, 2020 ME 141, ¶ 5, 243 A.3d 469.

---

[1]  We cite to the 2018 version of 17-A M.R.S. § 207-A(1)(A), the version in effect at the time of Pratt's alleged criminal conduct, because the statute was recently amended, *see* P.L. 2021, ch. 647, § B-17 (effective Jan. 1, 2023) (codified at 17-A M.R.S. § 207-A(1)(A) (2023)), though this amendment is not relevant in the present case.

[2]  The State observed,

> This involves, as you—I'm sure you understand because it's a domestic assault, it involves a parent and a child.  Now, something that you need to be aware of is that persons responsible for the long-term care—general care and welfare of a child— what we're talking about there is parents—are justified and can be justified in using a reasonable degree of force against the child to punish the child.
>
> The important part there is that this force has to be, one, reasonable, and it also has to be for punishment.  It can't be done in anger, frustration, with the intent to hurt, or when a person loses control.  It has to be something that's done to punish the child.

[3]  Trial counsel stated,

> We would agree, starting right off, that there was an assault, there was physical contact between a mother and a child, and we will admit, as alleged in the complaint, it was a child in the family household.  There are no questions on this as it goes forward.

4

[¶5] "At trial, only Pratt and the victim testified." *Id.* ¶ 5. During direct examination of the victim, the State elicited testimony that the victim was living with foster parents at the time of trial. *Id.* ¶ 6. When the State asked the victim where her siblings lived, Pratt objected on relevance grounds and the State, in turn, argued that the victim's testimony was relevant to the issue of the family dynamics that Pratt raised in her opening statement. *Id.* The trial court sustained Pratt's objection and "not[ed] that the question could indicate to the jury that children may have been removed." *Id.* (alterations and quotation marks omitted).

[¶6] The State later elicited testimony from the victim that she had told Pratt, "You aren't even a mother to us." *Id.* ¶ 7 (quotation marks omitted). The victim testified that she made that statement to Pratt because "all [Pratt] really did was stay in her room the majority of the time" and "didn't really treat us like we were her kids." *Id*. (quotation marks omitted). Pratt objected, arguing that

---

*But then it becomes a question of what was happening in the family. What were the family dynamics?*

It's true that a parent may use punishment in all its different forms so long as they do not exceed the bounds of reason and moderation.

A parent has had the right or the responsibility under the common law to use moderate and reasonable physical force without criminal liability.

*State v. Pratt*, 2020 ME 141, ¶ 5 n.1, 243 A.3d 469 (alterations omitted) (emphasis added).

the State's question lacked specificity, but the trial court overruled her objection. *Id.* ¶ 8. The State then continued to ask the victim more questions about Pratt's parenting practices. *Id.* The victim testified that "'Pratt didn't really treat us like we were [her] kids' and 'wouldn't really spend time with us,' that Pratt did not cook for the children and 'got us store-bought meals that were generally microwaved or easy to cook . . . [s]o we just made our own meals,' and that Pratt did not do the victim's laundry and did laundry only for the younger children." *Id.* Although Pratt objected to the relevance of the State's line of questioning, the trial court overruled Pratt's objection, stating that "it would allow a little bit of latitude on it."[4] *Id.* The State then asked additional questions regarding "Pratt's parenting and her engagement with her children, eliciting testimony about an alleged assault on another child [and] Pratt's failure to play with or eat with her children." *Id.* Pratt did not object to this latter testimony. *Id.*

---

[4] We explained on direct appeal that

> [i]t appears that the [trial] court at that time considered Pratt to be pursuing a parental discipline justification. Before ruling on the objection, the [trial] court said, "Part of the evidence in this incidence is going to give the jury some indication as to why the child behaved a particular way. Isn't that more in line with what your client is seeking to present?"

*Pratt*, 2020 ME 141, ¶ 8 n.3, 243 A.3d 469 (alterations and citations omitted).

6

[¶7] During direct examination, Pratt testified "that she slapped her daughter to avoid being assaulted by her, . . . [and] that she had been raising children for twenty-four years and understood how to raise and discipline children." *Id.* ¶ 9. Pratt further testified that she did not intentionally slap the victim but that, because she was "beat up a lot" in her neighborhood as a child, she "just reacted" when the victim came at her. During cross-examination, Pratt testified that she hit the victim in self-defense and *not* as discipline.

[¶8] Although the trial court had previously "sustain[ed] Pratt's objection to [the State's] questions related to the victim's siblings being removed from the home," during cross-examination of Pratt, "the State posed three questions about whether another child had been taken out of the house." *Id.* (quotation marks omitted). During closing argument "the State again referred to the fact that the victim no longer lived with Pratt." *Id.* Pratt did not object to the State's questions about the removal of the children or the State's closing argument.

[¶9] "Despite having introduced both the parental discipline justification and the self-defense justification in her opening statement, and despite the record's appearance that the [trial] court and the State were under the impression that Pratt was pursuing both [defenses], Pratt expressly waived the

parental discipline justification after the close of evidence." *Id.* ¶ 10 (citations omitted). The trial court's jury instructions therefore addressed only self-defense. *Id.* On November 15, 2019, the jury returned a verdict of guilty of domestic violence assault as charged. "On February 24, 2020, Pratt was sentenced to sixty days in jail, all suspended, and one year of probation."[5] *Id.* Pratt timely appealed from the trial court's judgment. *Id.*

## B.    Direct Appeal

[¶10]  On December 22, 2020, we affirmed the judgment of conviction. *Id.* ¶¶ 1, 19. Pratt argued that the trial court had clearly erred by admitting the victim's testimony regarding Pratt not "treating her children like they were [her] kids" and not doing the children's laundry. *See id.* ¶ 11 (alterations and quotation marks omitted). We were "unable to conclude that the [trial] court clearly erred by admitting the challenged testimony given that the parental

---

[5] When a petitioner challenges a criminal conviction through post-conviction review, we presume that collateral consequences exist. *Lewis v. State*, 2000 ME 44, ¶ 6, 747 A.2d 1191. Even if a petitioner challenging a conviction completes the imposed sentence while the post-conviction review proceeding is pending, the petitioner still is entitled to challenge the conviction because the collateral consequences of the conviction persist. *See State v. Fletcher*, 288 A.2d 92, 95 (Me. 1972). Here, although Pratt's probation ended on February 5, 2021, her case is nonetheless justiciable because the presumed collateral consequences of the underlying conviction constitute the statutory jurisdictional requirement of a "present restraint or impediment." *See* 15 M.R.S § 2124(1) (2023); *Price v. State*, 2010 ME 66, ¶¶ 5-7, 10, 1 A.3d 426; *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011). Moreover, given that the conviction in this case is for a violation of 17-A M.R.S. § 207-A, at least one collateral consequence is clear. *See, e.g.*, 15 M.R.S. § 393(1-B) (2023) (prohibiting the ownership, possession, or control of a firearm by a person convicted of violating 17-A M.R.S. § 207-A).

discipline justification was raised by Pratt in her opening statement and remained at issue when that testimony was admitted." *Id.* ¶ 13. We specifically reasoned that because Pratt raised the parental discipline justification in her opening statement, the relationship between Pratt and the victim was relevant to understanding the victim's behavior and the reasonableness of Pratt's conduct. *Id.* We noted, however, that "*if the parental discipline justification had not been at issue, the evidence about Pratt's parenting practices . . . would be inadmissible evidence of bad character.*" *Id.* ¶ 13 n.5 (emphasis added).

[¶11] We further concluded that "[t]he State's line of questioning, in violation of the [trial] court's . . . ruling, about one of Pratt's other children being taken out of the house was plain error under existing law." *Id.* ¶ 16 (quotation marks omitted). "[A]lthough we admonish[ed] the prosecutor for eliciting this inadmissible testimony," we concluded that, "considering the other evidence that was admitted during trial, . . . the [trial] court's error in failing to sua sponte step in and cut off the prosecutor's questioning was [not] sufficiently prejudicial to have affected the outcome of the proceeding." *Id.* ¶ 16 (quotation marks omitted). We explained that "although the State elicited inadmissible testimony from Pratt, the jury was already aware that the victim no longer lived with Pratt, and the State's reference to the other child's removal was brief and

part of a broader discussion about Pratt's discipline style and methods of parenting that Pratt herself had placed in issue." *Id.* ¶ 19.

## C.    Post-Conviction Review Proceedings

[¶12]    Representing herself, Pratt timely filed a petition for post-conviction review on January 26, 2021, setting forth a claim of ineffective assistance of counsel. *See* 15 M.R.S. § 2128-B (2023). After she was appointed counsel, Pratt filed an amended petition, which advanced all claims in her initial petition and added the claims, inter alia, that her trial counsel was ineffective because he (1) opened the door to testimony and argument about Pratt's parenting, and (2) failed to object to or seek redress for prosecutorial error.[6]

[¶13]  The PCR court held an evidentiary hearing on April 8, 2022. On direct examination, Pratt's trial counsel admitted that he had opened the door to evidence regarding Pratt's parenting practices by referring to the parental discipline justification during his opening statement. Trial counsel explained that "when [Pratt] first came to see [him] and [they] were talking about what happened, it seemed like it was parental [discipline] on . . . her part," but that

---

[6] Pratt appears to have pursued only these two additional claims of ineffective assistance of counsel during her post-conviction review proceedings. The PCR court found that Pratt had "failed to produce any credible evidence or develop any argument related [to the other claims raised in her petition]." Because Pratt does not argue that the PCR court erred with respect to this finding on appeal, we do not address whether the PCR court erred in making this finding, nor do we consider Pratt's unpursued post-conviction review claims.

10

he was "absolutely" on notice before trial that this was a self-defense case. Trial

counsel further testified,

> I felt . . . [that] at first, it was a discipline issue that they were talking about. But then it developed into an assault charge. And I may have had . . . two thoughts in my mind. The initial one first being oh, this is about parental discipline and you have the right to do that to a child. But then it became clear getting into it later that it was self-defense on her part.

[¶14] Trial counsel also testified that he thought he knew how Pratt

would testify at trial. Trial counsel further explained that he had presented the

parental discipline justification in his opening statement because he thought it

might be generated by either Pratt's or the victim's testimony, but he had

changed strategy once the defense was not generated. Finally, trial counsel

testified about his decision to not object to the prosecutor's additional

questions about Pratt's children being removed from her care:

> It seems to me that from my practice, that objection had been made and sustained once. And to keep jumping up and objecting sometimes can look to the jury that you're trying to keep something from them.

[¶15] After observing trial counsel's testimony at the post-conviction

review hearing, Pratt's expert witness testified that it was unreasonable for

trial counsel to (1) open the door to Pratt's family dynamics because that

prejudicial evidence would not have been otherwise admitted and (2) fail to

object to the instances of prosecutorial error because he could have done so at sidebar. The expert also testified that trial counsel's deficiencies prejudiced Pratt and Pratt had therefore satisfied the two prongs of a claim of ineffective assistance of counsel.

[¶16] On June 14, 2022, the PCR court denied Pratt's petition for post-conviction relief. With respect to her claim that trial counsel's representation was ineffective because he opened the door during opening statements to prejudicial evidence about her parenting practices, the PCR court found that trial counsel's representation did not fall below the objective standard of reasonableness. The PCR court reasoned that it was unclear whether Pratt was going to testify, the parental discipline justification was a reasonable defense to raise, and there was potential overlap between Pratt's parental discipline and self-defense justifications.

[¶17] With respect to Pratt's claim that trial counsel should have objected to the prosecutorial error at trial, the PCR court concluded that, although trial counsel's representation fell below an objective standard of reasonableness and he should have at least requested a sidebar to object, these deficiencies did not adversely affect Pratt's defense because the elicited testimony was "vague and brief" and was "just as likely to show bias on the part

of [the victim] due to her anger with her mother as it was to reflect negatively on [Pratt]." The PCR court ultimately concluded that Pratt had failed to meet her burden of establishing ineffective assistance of counsel.

[¶18] Pursuant to 15 M.R.S. § 2131(1) (2023) and M.R App. P. 2B(b)(1), 19(a)(2)(F), (b), Pratt timely appealed, and we granted a certificate of probable cause on December 5, 2022.

## II. DISCUSSION

[¶19] "We review a PCR court's factual findings for clear error and its legal conclusions de novo." *Winchester v. State*, 2023 ME 23, ¶ 5, 291 A.3d 707. "Because this analysis often involves mixed questions of law and fact, we apply the most appropriate standard of review for the issue raised depending on the extent to which that issue is dominated by fact or by law." *Id.* (quotation marks omitted).

[¶20] "The Sixth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution ensure that a criminal defendant is entitled to receive the effective assistance of an attorney." *Watson v. State*, 2020 ME 51, ¶ 17, 230 A.3d 6 (quotation marks omitted). When reviewing a claim of ineffective assistance of counsel, we apply the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the petitioner to

prove that (1) trial counsel's performance fell below an objective standard of reasonableness and (2) the errors of trial counsel actually had an adverse effect on the defense. *Winchester*, 2023 ME 23, ¶¶ 6-7, 291 A.3d 707.

## A.    Performance

[¶21]    Pratt asserts that trial counsel's performance was deficient because he failed to understand that Pratt hit the victim in self-defense and he, therefore, did not need to open the door to prejudicial evidence regarding Pratt's parenting practices by raising the parental discipline justification during opening statements.  Pratt contends that her self-defense theory was "readily apparent from the beginning of the attorney-client relationship" and that trial counsel "should have simply asked his client how she would testify."[7]

[¶22]    Under the first prong of the *Strickland* test, "a petitioner must demonstrate . . . that counsel's representation fell below an objective standard of reasonableness."  *Watson*, 2020 ME 51, ¶ 19, 230 A.3d 6 (quotation marks omitted).  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms . . . . [and] counsel's

---

[7] Neither Pratt nor the State contend that the PCR court erred by finding that trial counsel's failure to object to prosecutorial error at trial constituted deficient representation.  We therefore consider only whether the PCR court erred by concluding that Pratt was not adversely affected by this prosecutorial error.  *See infra* Part B.

representation of a defendant falls below the objective standard of reasonableness if it falls below what might be expected from an ordinary fallible attorney." *Id.* (quotation marks omitted). "Judicial inquiry into the effectiveness of representation is highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* ¶ 20 (alterations and quotation marks omitted); *see also Levesque v. State*, 664 A.2d 849, 851 (Me. 1995) ("Caution must be used in evaluating the performance of the trial attorney so that results based solely on hindsight are avoided. Deference to strategic or tactical decisions of the trial attorney is substantially heightened; these decisions are reviewable only for manifest unreasonableness." (quotation marks and citations omitted)). Nevertheless, "a determination that [trial] counsel's choices amount to trial strategy does not automatically insulate them from review." *Watson*, 2020 ME 51, ¶ 20, 230 A.3d 6 (alterations and quotation marks omitted).

[¶23] In Pratt's direct appeal, we concluded that if the parental discipline justification had not been put into issue during Pratt's opening statement, the

evidence about her parenting practices would have been inadmissible. We therefore need to consider only whether the PCR court erred by concluding that trial counsel's opening the door to evidence of Pratt's parenting practices was reasonable under prevailing professional norms. The PCR court reasoned that trial counsel's representation was not deficient because "[a] defendant's choice of whether or not to testify rests solely with the defendant" and, "[h]ad [Pratt] elected not to testify, the only viable defense of the two [defenses] presented during her opening statement would have been … the parental-discipline justification." We disagree with the PCR court's conclusion for the following reasons.

[¶24] First, the PCR court is correct that it is always a defendant's choice to testify or to not testify. *See, e.g.*, 15 M.R.S. § 1315 (2023). It is trial counsel's responsibility, however, to "reasonably consult with the client about the means by which the client's objectives are to be accomplished," M.R. Prof. Conduct 1.4(a)(2) & cmt. [5] ("The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued to the extent the client is willing and able to do so."), and trial counsel is specifically obligated to consult the client about whether the client will testify, M.R. Prof Conduct 1.2(a)

16

("In a criminal case, the lawyer shall abide by the client's decision, *after consultation with the lawyer*, as to . . . whether the client will testify." (emphasis added)). It therefore falls below the objective standard of reasonableness for trial counsel to not have *any* idea of whether the client will testify.[8] In this case, contrary to the PCR court's determination, trial counsel knew that Pratt would testify. Notably, trial counsel promised the jury during his opening statement, "[M]ost importantly, . . . [Pratt] will testify herself and tell you what happened," which is a promise not to be taken lightly. *See Ouber v. Guarino*, 293 F.3d 19, 28 (1st Cir. 2002) ("When a jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made."); *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988) (noting "little is more damaging than to fail to produce important evidence that had been promised in an opening").

[¶25] Second, simply employing the reasonable due diligence required of lawyers means that trial counsel has a duty to know to a fair degree of

---

[8] Perhaps the only time where trial counsel may not have *any* idea of whether the client will testify at trial is when trial counsel has consulted with the client and advised the client not to testify, but the client has nevertheless expressed a desire to do so.

certainty *how* the client will testify. *See* M.R. Prof. Conduct 1.3 ("A lawyer shall act with reasonable diligence . . . in representing a client."); M.R. Prof. Conduct 1.1 cmt. [5] ("Competent handling of a particular matter includes *inquiry into and analysis of the factual* and legal elements of the problem . . . ." (emphasis added)). In this case, even if trial counsel reasonably thought that the parental discipline justification was worth raising, it fell below the objective standard of reasonableness for trial counsel to not have consulted with Pratt, prior to trial, about which defenses trial counsel should raise, the evidence needed to prove those defenses, and how Pratt would testify. In fact, trial counsel took notes on Pratt's written summaries of the incident, which support a self-defense theory, and he appears to have reviewed Pratt's summaries well in advance of trial.[9] Trial counsel also testified during the PCR hearing that he was on notice prior to trial that Pratt's version of the incident aligned with the self-defense justification.

---

[9] In one of her written summaries, Pratt provided a timeline for trial counsel, which states, in part, "On Saturday May 25, 2019 [the victim] and I had an issue. She was very upset and emotional. It got violent. She came at me, I slapped her one time, open handed in the face *in defense of myself*, she continued to come at me and repeatedly swing at me." (Emphasis added.) In a separate written summary containing a more detailed description of the assault, Pratt wrote, "*She came at me while screaming with her right hand raised, as though she was going to hit me, so I stood up and open handed slapped her left check.* She was acting like a crazy person and started swinging so I tried to grab her wrists and when I couldn't I grabbed her upper arms and pushed her to the floor where I held her immobile. . . . She was screaming and flailing and *trying to get at me*." (Emphasis added.)

[¶26]  Third, and finally, if trial counsel was at all uncertain of how Pratt would testify, he was under no obligation to raise the parental discipline justification in his opening statement.  *See Levesque*, 664 A.2d 849, 851 (Me. 1995) ("In fact, the nature and use of opening statements varies so widely depending on the lawyer's style that the failure to make *any* opening statement has been held not to constitute ineffective assistance of counsel."); *Ouber*, 293 F.3d at 28 (explaining that trial counsel is "under no obligation to make an opening statement at all").  Even if the utmost deference is given to trial counsel—and it is assumed that trial counsel was *reasonably* unsure whether Pratt viewed the incident as self-defense, parental discipline, or both—it fell below the objective standard of reasonableness for trial counsel to open the door during opening statements to prejudicial evidence for a defense that, at best, he thought only *might* be generated by Pratt's or the victim's testimony. *Cf. Van Thrower v. Haynes*, No. C18-1785-RAJ, 2020 WL 2515866, at *13 (W.D. Wash. Feb. 13, 2020) (explaining that, despite trial counsel's "[sound] tactics in attempting to recover from the unexpected admission of testimony," trial counsel's inadvertent opening the door to admission of such evidence in the first place "was neither strategic nor sound").

[¶27]  In short, contrary to the reasoning of the PCR court, trial counsel in fact expected Pratt to testify and he knew that she was suggesting that she acted in self-defense.  Under these circumstances and for the reasons stated above, we conclude that trial counsel's decision to open the door to prejudicial evidence of Pratt's parenting practices during opening statements fell below the objective standard of reasonableness, and the PCR court erred by concluding otherwise.

## B.    Resulting Prejudice

[¶28]  Pratt argues that trial counsel's decision to open the door to evidence about Pratt's parenting practices and his failure to object at trial to the prosecutorial error, in aggregate, make Pratt's conviction unreliable and unworthy of confidence.

[¶29]  If a petitioner proves the first prong of the *Strickland* test, then the petitioner must next prove that she was prejudiced, i.e., "that the errors of counsel actually had an adverse effect on the defense."  *Watson*, 2020 ME 51, ¶ 29, 230 A.3d 6 (quotation marks omitted).  "To prove prejudice . . . [the petitioner] must establish that, but for trial [counsel's] deficient performance, there is a reasonable probability that the result of the proceeding would have been different."  *Id*. (quotation marks omitted).  "A conviction may be unreliable

and not worthy of confidence . . . even without proof that a different outcome was more likely than not." *Id.* (quotation marks omitted). Where there are multiple instances of deficient performance, we will consider the cumulative effect of all of trial counsel's errors when assessing whether a defendant was prejudiced. *See Dugas v. Coplan*, 428 F.3d 317, 335 (1st Cir. 2005).

[¶30] In Pratt's direct appeal, we already considered the prejudicial effect of the prosecutorial error. *Pratt,* 2020 ME 141, ¶ 19, 243 A.3d 469. There, like the PCR court, we concluded that the prosecutorial error, *standing alone*, was not sufficiently prejudicial to have affected the outcome of the proceedings. *Id.* We stand by our prior holding and agree with the PCR court's conclusion on this point. Our conclusion on Pratt's direct appeal, however, was founded on the reasoning that, because trial counsel had opened the door to Pratt's parenting practices, the jury was already aware that the victim no longer lived with Pratt and had some broader evidence about Pratt's parenting style and the removal of Pratt's children from her care. *Id.* Here, because we conclude that trial counsel's decision to open the door to prejudicial evidence of Pratt's parenting practices fell below the objective standard of reasonableness, we must now consider the cumulative prejudicial effect of (1) the evidence that would not have been admitted if trial counsel had not opened the door and

(2) the prosecutorial error *without* the evidence that was admitted due to trial counsel opening the door.

[¶31]  As noted *supra*, if trial counsel had not placed the parental discipline justification in issue, the victim's testimony about Pratt's parenting practices would have been inadmissible evidence of bad character.  Under such circumstances, the jury would not have heard the victim's testimony about Pratt not spending time with the children, the children making their own meals, or Pratt not doing the victim's laundry.  *See Pratt*, 2020 ME 141, ¶ 8, 243 A.3d 469.  We believe the testimony about Pratt's parenting practices—which did not make it any more or less probable that Pratt struck the victim or acted in self-defense and served only to establish and highlight Pratt's bad character—reasonably could have impacted the jury's verdict and thus is of significant prejudicial effect.  *Id*. ¶ 13 n.5; *see Watson*, 2020 ME 51, ¶ 29, 230 A.3d 6.

[¶32] Further, there are additional prejudicial effects that stem from trial counsel's decision to open the door to Pratt's parenting practices.  In particular, if Pratt's parenting practices were not at issue, the trial court would not have given the State "a little bit of latitude" when trial counsel objected to the State's

questions.[10] *See supra* n.4 and accompanying text. This would have eliminated the jury's hearing a broader discussion about Pratt's discipline style and references to the removal of Pratt's children from her care. Under these circumstances, our reasoning in Pratt's direct appeal—that the prosecutorial error was not sufficiently prejudicial to have affected the outcome of the proceeding given the evidence admitted due to trial counsel's opening the door to Pratt's parenting practices—no longer applies. Upon reassessing the prejudicial effect of the prosecutorial error in this broader context, we conclude that the prejudicial effect of trial counsel's ineffective assistance is sufficient to make us question the reliability of Pratt's underlying conviction.

[¶33] Accordingly, we hold that due to the cumulative effect of trial counsel's opening the door to Pratt's parenting practices *and* his failure to object to prosecutorial error, there is a reasonable probability that the outcome of the proceeding would have been different. We therefore vacate the judgment denying Pratt's petition for post-conviction review, and we remand to the PCR court to enter a judgment granting Pratt's petition and vacating the conviction

---

[10] We also note that the trial court sustaining Pratt's objection, in turn, would have eliminated trial counsel's later concern that continuing to object would make him "look to the jury that [he was] trying to keep something from them."

in the underlying criminal judgment.  *See Ford v. State*, 2019 ME 47, ¶ 21, 205 A.3d 896; 15 M.R.S. § 2130 (2023).

The entry is:

> Judgment vacated.  Remanded to the post-conviction review court for entry of a judgment granting the petition for post-conviction review and vacating the conviction in the underlying criminal judgment.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Meggan M. Pratt

Todd R. Collins, District Attorney, and Matthew A. Hunter, Asst. Dist. Atty. (orally), 8th Prosecutorial District, Houlton, for appellee State of Maine