MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2024 ME 25
Docket:       Cum-23-329
Argued:       March 5, 2024
Decided:      April 11, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.

MARK CARDILLI JR.

v.

STATE OF MAINE

HORTON, J.

[¶1]  The State of Maine appeals from a judgment of the post-conviction court (Cumberland County, *O'Neil, J.*) granting Mark Cardilli Jr.'s petition for post-conviction relief based on ineffective assistance of counsel; vacating his conviction for manslaughter (Class A), 17-A M.R.S. § 203(1)(A) (2023); and ordering a new trial.  The post-conviction court decided that Cardilli's two trial attorneys failed to present an adequate argument that Cardilli acted in self-defense as provided in 17-A M.R.S. § 108(2)(A)(1) (2023): "A person is justified in using deadly force upon another person: When the person reasonably believes it necessary and reasonably believes such other person is: About to use unlawful, deadly force against the person or a 3rd person." However, the trial court (*Mills, J.*), in acquitting Cardilli of intentional or

2

knowing murder, 17-A M.R.S. § 201(1)(A) (2023), and finding him guilty of manslaughter after a bench trial, expressly found that the State had proved beyond a reasonable doubt that, if Cardilli actually believed that his use of deadly force was necessary under the circumstances, his belief was objectively unreasonable. As a matter of law, that finding would have negated a self-defense argument under section 108(2)(A)(1). Any inadequate advocacy by Cardilli's trial counsel could not have had an adverse effect on his defense sufficient to undermine confidence in the outcome of the trial. We therefore vacate the judgment of the post-conviction court and remand for entry of a judgment denying Cardilli's petition.

## I. BACKGROUND

[¶2]  We begin by summarizing (A) the historical facts found by the trial court in Cardilli's criminal trial, (B) the proceedings on the murder charge in the trial court, (C) our appellate review of the judgment of conviction of manslaughter, and (D) the post-conviction proceedings now on appeal.

## A.   Findings of the Trial Court in the Criminal Case

[¶3]  Pertinent here, the trial court (*Mills, J.*) found the following facts, based largely on Cardilli's testimony, which the court found mostly credible. *See State v. Cardilli*, 2021 ME 31, ¶¶ 2-9, 254 A.3d 415 (providing a detailed

summary of the facts). On the night of March 15, 2019, Cardilli was called downstairs in the home where he lived with his parents and younger sister to discuss the presence of Isahak Muse—the twenty-two-year-old boyfriend of Cardilli's seventeen-year-old sister. Muse, who had been drinking throughout the day, was not supposed to be in the home due to bail conditions imposed on Cardilli's sister. After some discussion, Cardilli's father agreed to let Muse stay until 1:00 a.m. Muse did not leave at that time. He pleaded to stay, but Cardilli's parents insisted that he had to leave.

[¶4] Cardilli and his father escorted Muse to the kitchen door, which exited to a breezeway. When Cardilli's mother yelled that Cardilli's sister had struck her, Muse pushed his way back into the house through Cardilli and his father, who were thrown back against the refrigerator and the kitchen table.

[¶5] Cardilli went to his apartment above the home's garage to get his gun but then decided against getting the gun. He returned and got Muse away from his father. Cardilli's sister began hitting Cardilli and his father. Muse punched at Cardilli but missed. Cardilli returned to his apartment, got his gun, and put it in his pocket. When Cardilli returned, he told his father to get behind him.

4

[¶6] Cardilli pulled out the gun and aimed it at Muse. Cardilli did not call 9-1-1 because he thought Muse would leave once he saw the gun. Cardilli told Muse to leave. Muse yelled for his phone to call for a ride. Muse then moved toward Cardilli, punching Cardilli as Cardilli backed away into his sister's room, where Cardilli's father pushed Muse onto the sister's bed. Cardilli and Muse moved to the hall. Muse punched Cardilli in the face four or five times.

[¶7] Cardilli knew that Muse had no gun. He did not see Muse with a knife. Muse did not try to grab Cardilli's gun. Regardless, Cardilli was concerned that if he dropped the gun, Muse would use it against Cardilli and his family. Cardilli fired three shots when Muse was punching at him, and Muse died of internal and external bleeding after two bullets entered the back of his torso after he twisted away following the first shot.

## B.    Original Trial Court Proceedings

[¶8] On April 5, 2019, the grand jury issued an indictment charging Cardilli with intentional or knowing murder. The court held a jury-waived trial in December 2019. At that trial, many witnesses testified, including Cardilli himself. Cardilli testified that he knew Muse did not have a gun or knife but that he did believe Muse was about to use deadly force. He testified, "The reason why I shot was I feared, not knowing how many more punches I could take, and

if I dropped the gun, lost the gun, Mr. Muse would take it and turn it on me and my family."

[¶9] Cardilli, through his attorneys, raised self-defense as an issue both in his oral closing argument at the end of the trial and in his post-trial memorandum, filed in court on the day of the closing arguments.

[¶10] Orally, Cardilli's lead attorney argued that Cardilli reasonably believed that his use of deadly force was necessary because "he didn't know how many more punches he could take and that Mr. Muse may get that gun." He argued that "it wasn't just reasonable, again it was wise for Marky Cardilli to believe that his life was in danger because that guy wasn't stopping for nothing. He wasn't listening to anything. He wasn't stopping for anything. He was going to do whatever he wanted. And Mark Cardilli's belief, when he was in that corner, was more than reasonable."

[¶11] Cardilli's memorandum focused on the justification of self-defense under 17-A M.R.S. § 108(2)(B), which addresses defense against an intruder and provides,

A person is justified in using deadly force upon another person:

. . . .

B. When the person reasonably believes:

6

> (1) That such other person has entered or is attempting to enter a dwelling place or has surreptitiously remained within a dwelling place without a license or privilege to do so; and
>
> (2) *That deadly force is necessary to prevent the infliction of bodily injury by such other person upon the person or a 3rd person present in the dwelling place.*

(Emphasis added.) Because this justification permits the use of deadly force if reasonably necessary "to prevent the infliction of bodily injury," 17-A M.R.S. § 108(2)(B)(2), Cardilli's memorandum disclaimed reliance on the much more limited justification in section 108(2)(A)(1), which permits the use of deadly force only if it is reasonably necessary to prevent another person's imminent use of deadly force. *See* 17-A M.R.S. § 108(2)(A)(1) ("A person is justified in using deadly force upon another person: When the person reasonably believes it necessary and reasonably believes such other person is: About to use unlawful, deadly force against the person or a 3rd person."). Focusing on the evidence that Muse was punching Cardilli when Cardilli fired his gun, the memorandum argued that Cardilli did not "need to show that Mr. Muse was imminently going to use deadly force on [Cardilli]. This is not a self-defense case under 17-A M.R.S.A. § 108(2)(A) where the Court needs to determine whether Mr. Muse was going to inflict deadly force on any of the inhabitants of [the residence]." Cardilli's memorandum also raised a defense-of-premises

justification, *see* 17-A M.R.S. § 104 (2023), and argued that only if the court found unreasonable his belief that deadly force was necessary could it find him guilty of a lesser included offense based on "imperfect self-defense," *State v. Hanaman*, 2012 ME 40, ¶ 13 n.4, 38 A.3d 1278.

[¶12]  The court entered a judgment on December 27, 2019.  The court found that the State had proved beyond a reasonable doubt that Cardilli voluntarily aimed the gun at Muse's chest and fired three times, knowing that it was practically certain that the conduct would cause Muse's death.  *See* 17-A M.R.S. § 201(1)(A); 17-A M.R.S. § 35(2)(A) (2023).  Having determined that the State had proved the elements of murder, the court turned to Cardilli's asserted justifications.

[¶13]  Applying the law of self-defense that Cardilli's memorandum had advanced, 17-A M.R.S. § 108(2)(B), the court found that the State had not proved beyond a reasonable doubt that Cardilli "did not actually believe that his use of deadly force was necessary to prevent Isahak Muse from inflicting bodily injury upon defendant or a third person present in the dwelling."  The court further found, however, that the State had proved beyond a reasonable doubt that "if [Cardilli] did actually believe that his use of deadly force was necessary to prevent Isahak Muse from inflicting bodily injury upon [Cardilli]

8

or a third person present in the dwelling, his belief to that effect was *objectively unreasonable*." (Emphasis added.) The court therefore found that Cardilli "[r]ecklessly, or with criminal negligence, cause[d] the death of another human being," and was guilty of manslaughter. 17-A M.R.S. § 203(1)(A); *see* 17-A M.R.S. § 35(3)(A), (4)(A); *see also Hanaman*, 2012 ME 40, ¶ 13 n.4, 38 A.3d 1278.

[¶14] Before sentencing, Cardilli moved for the court to reconsider the verdict and for additional findings of fact. *See* M.R.U. Crim. P. 23(c). The court granted the motion for findings and incorporated additional findings into the judgment, but it denied the motion to reconsider the verdict. Among the additional findings, the court found as follows:

> With regard to the need for deadly force, the court finds the video of Mark Cardilli, Sr. and defendant, recorded shortly after the shooting, shows both men in good condition. Their injuries were minimal. Some of their injuries were inflicted by [Cardilli's sister]. Mr. Muse had been drinking all day on March 15, 2019 and was impaired. *Deadly force was not required to prevent minimal bodily injury* or to remove Mr. Muse from the house.

> Mark Cardilli, Sr. stated during the video that he thought defendant had an air soft gun, he did not think the gun was real, that was why he did not say anything, and he thought defendant was trying to scare Mr. Muse. The court reasonably infers from Mark Cardilli, Sr.'s statements that if he had known the gun was real, he would have said something because such force was unnecessary.

> Further, defendant decided not to retrieve his gun during his first trip to his apartment during the interaction among Mr. Muse,

Mark Cardilli, Sr., and defendant. Defendant returned from his apartment and after an additional punch, defendant returned to his room and got the gun. Mr. Muse had no gun or knife and did not try to grab defendant's gun. Mr. Muse's response to seeing the gun was to yell for his phone because, the court reasonably infers, he needed the phone to call for a ride. *Defendant introduced the only deadly force to the situation.*

(Emphasis added and citations omitted.)

[¶15] After holding a sentencing hearing, the court entered a judgment on August 31, 2020, sentencing Cardilli to eleven years in prison, with all but seven years and six months suspended and four years of probation.

## C. Appeal

[¶16] Cardilli appealed from the judgment of conviction of manslaughter, and we issued an opinion in June 2021. *See Cardilli*, 2021 ME 31, 254 A.3d 415. Cardilli raised the issue of self-defense under section 108(2)(A)(1), *Cardilli*, 2021 ME 31, ¶ 32, 254 A.3d 415, and we concluded that Cardilli had waived the issue in his written memorandum submitted in closing but went further to state as follows:

Even if we were to assume that Cardilli's section 108(2)(A) argument was not expressly waived, we find it unpersuasive. The court's findings regarding the level of "threat" posed by Muse preclude a finding that Cardilli held an objectively reasonable belief that Muse was about to use unlawful, deadly force against anyone in the household. As mentioned above, the court explicitly found that Muse was not armed and that he did not at any time try to grab Cardilli's gun. The court specifically found that Muse's response to

seeing the gun was to ask for his phone so he could call for a ride home. Even if Cardilli had an actual belief that Muse was about to use deadly force by taking control of the gun that Cardilli brought into the chaos—a belief not asserted by Cardilli at trial—the court found that any such belief was objectively unreasonable. The court aptly noted that "Muse had been drinking all day on March 15, 2019 and was impaired. Deadly force was not required to prevent minimal bodily injury or to remove . . . Muse from the house."

*Id.* ¶ 35. We affirmed the judgment. *Id.* ¶¶ 1, 35.

## D. Post-Conviction Review

[¶17] On April 1, 2022, Cardilli filed a petition for post-conviction review contending, among other things, that counsel had rendered ineffective assistance by failing to argue consistently that Cardilli had acted in self-defense as the justification is defined in section 108(2)(A)(1). *See* 15 M.R.S. § 2129 (2023). He asked "that the sentence be vacated, and a new trial be ordered."

[¶18] The post-conviction court (*O'Neil, J.*) held an evidentiary hearing on April 13 and 14, 2023. The court took judicial notice of the entire trial court record. The court then heard testimony from Cardilli's lead trial counsel, who thought that the justification of self-defense as provided by section 108(2)(A)(1) was generated and disagreed with the trial judge's findings and analysis as to the level of threat that the victim posed. He admitted that his co-counsel had drafted the closing memorandum and that he had not reviewed it before closing arguments. He testified that he did not realize until receiving

the Law Court's opinion that the memorandum submitted by co-counsel had said that the case was not about section 108(2)(A).

[¶19] When asked if he had inquired of Cardilli during trial "whether he feared he would be killed by a punch," counsel replied, "No. I did—in his trial prep, I did repeatedly, and that's why I didn't ask him the question because of the answer I repeatedly got." Counsel testified, "[B]eing killed by a punch, the answer to that was repeatedly negative." He testified that Cardilli indicated that he feared being killed only if the victim took his gun.

[¶20] Cardilli's co-counsel testified that she did not believe that a self-defense justification under section 108(2)(A)(1) was generated by the evidence because there was no evidence of the imminent use of deadly force by the victim. Without evidence that the victim had special training in fighting, she could not see how Cardilli could prove that he had an objectively reasonable belief that deadly force was necessary and that the victim was about to use unlawful deadly force against him or someone else.

[¶21] The court also heard testimony from Cardilli's mother regarding other grounds of ineffective assistance of counsel not at issue here, from Cardilli regarding his interactions with counsel, and from a law professor who opined that it was below the standard of an ordinary fallible attorney for lead counsel

not to have read the written arguments he was submitting to the court and for co-counsel to lack a shared, cohesive trial strategy.  Finally, Cardilli offered testimony from a former police officer and forensic behaviorist, Thomas Aveni, presented as an expert on the use of force.  The State, which had already moved to exclude Aveni as an expert, objected to his testimony at trial.  Instead of taking voir dire testimony, the court allowed Aveni to testify as an offer of proof, with the court ruling after the attorneys' examination of Aveni on whether any of Aveni's testimony would be admitted.

[¶22]  Aveni testified that in his opinion Cardilli had made a rational decision when presented with an intoxicated, fearless man who was hitting him in the head, which can cause serious injury or death.  The court excluded the testimony as to the effect of blood-alcohol content on the victim, Cardilli's state of mind, and any other evidence introducing facts that were not presented at the criminal trial.  The court admitted only testimony drawing the court's attention to evidence in the trial record that could demonstrate that it was objectively reasonable for Cardilli to believe that the victim was about to use unlawful deadly force.[1]  After additional testimony from Cardilli's lead trial counsel, the hearing ended.

---

[1] The State argues that the court erred in admitting any expert testimony from Aveni at the post-conviction hearing.  If the court had admitted the portion of Aveni's testimony that contradicted

[¶23]  The post-conviction court entered a judgment on August 22, 2023, granting Cardilli's petition for post-conviction relief, vacating the judgment of conviction, and remanding the matter for a new trial.  The court found that Cardilli's two attorneys "did not have a cohesive trial strategy," had opposing views about whether the self-defense justification set forth in section 108(2)(A)(1) was generated, and did not communicate effectively.

[¶24]  The court concluded that performance by counsel fell below the objective standard of reasonableness and that counsel's failures "call into question the fairness and integrity of the trial court proceedings."  The court reasoned that oral and written arguments can be influential and that, although the trial court made extensive findings, it did not address or analyze section 108(2)(A)(1), which the post-conviction court determined was applicable due to Cardilli's testimony that he did not know how many more punches he could take and that he was worried that if he dropped the gun, the victim would turn

---

the trial court's factual findings, we would agree, because that testimony would not be pertinent in determining whether the varied arguments of Cardilli's co-counsel would have changed the outcome of the trial.  *See* M.R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine *a fact in issue*." (emphasis added)); *State v. Burbank*, 2019 ME 37, ¶¶ 7-8, 204 A.3d 851.  The court did not abuse its discretion here, however, because the court admitted Aveni's testimony only to the extent that it was pertinent to a fact in issue.  Specifically, the court admitted Aveni's testimony identifying the portions of the trial record that could show that the inconsistent arguments of counsel may have affected the trial court's finding that it was unreasonable for Cardilli to believe that his use of deadly force was necessary.

14

it on Cardilli or his family. The court was concerned that the written argument of Cardilli's trial counsel undermined Cardilli's credibility by stating that section 108(2)(A) was not at issue, and it determined that this could have affected the trial court's fact-finding.

[¶25] The post-conviction court concluded that our opinion that Cardilli could not prevail under section 108(2)(A) did not preclude a finding of ineffective assistance because "the issue is not whether the outcome of the case would have been different if trial counsel had argued 108(2)(A), but rather, whether the integrity of the proceedings, including the factfinding process, were affected by their failure to do so."

[¶26] The State timely appealed from the post-conviction court's judgment. 15 M.R.S. § 2131(2) (2023); M.R. App. P. 2B(b)(1), 19(b).

## II. DISCUSSION

[¶27] The State argues that the court erred in finding and concluding that the ineffective assistance of counsel resulted in prejudice to Cardilli. "The United States and Maine Constitutions guarantee that a criminal defendant is entitled to receive the effective assistance of an attorney." *Gordon v. State*, 2024 ME 7, ¶ 11, 308 A.3d 228 (quotation marks omitted). "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that

counsel's representation fell below an objective standard of reasonableness and (2) that the errors of counsel actually had an adverse effect on the defense." *Id.* (quotation marks omitted).

[¶28]  The State does not challenge the finding, as to the first prong, that Cardilli's attorneys' inconsistency in raising section 108(2)(A)(1) as a justification amounted to performance below the standard of an ordinary fallible attorney. *See Gordon*, 2024 ME 7, ¶ 12, 308 A.3d 228.  It challenges only the post-conviction court's determination that the second prong of the test was met, arguing that Cardilli did not show prejudice resulting from the ineffective assistance of counsel. *See id.* ¶ 13.  According to the State, the post-conviction court improperly speculated about the effect of counsel's performance on the trial court's finding that Cardilli lacked an objectively reasonable belief that deadly force was necessary under the circumstances.

[¶29]  In reviewing a post-conviction court's decision on ineffective assistance of counsel, we "review a post-conviction court's legal conclusions de novo and its factual findings for clear error."  *Id.* ¶ 14 (quotation marks omitted); *see Fortune v. State*, 2017 ME 61, ¶ 12, 158 A.3d 512.  Because the analysis presents mixed questions of law and fact, we "apply the most appropriate standard of review for the issue raised depending on the extent to

16

which that issue is dominated by fact or by law." *Gordon*, 2024 ME 7, ¶ 14, 308 A.3d 228 (quotation marks omitted).

[¶30]  "We apply a deferential standard of review to the findings of a post-conviction court, and we will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it." *Fahnley v. State*, 2018 ME 92, ¶ 16, 188 A.3d 871 (quotation marks omitted). "[T]he facts found regarding both the underlying trial and the post-conviction hearing are viewed in the light most favorable to the post-conviction court's judgment." *Id.* (quotation marks omitted).

[¶31]  In determining whether counsel's error had an adverse effect, a court considers whether there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Theriault v. State*, 2015 ME 137, ¶ 19, 125 A.3d 1163 (quotation marks omitted).  "[T]he proper test of a reasonable probability is different from an outcome-determinative standard, which is the quantitative inquiry that would require proof that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* ¶ 20 (quotation marks omitted).

If the proceeding was unreliable and unfair, a court may grant post-conviction relief "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* (quotation marks omitted). In other words, "[a] conviction may be unreliable and not worthy of confidence . . . even without proof that a different outcome was more likely than not." *Pratt v. State*, 2023 ME 66, ¶ 29, 303 A.3d 661 (quotation marks omitted). The question is whether "trial counsel's performance undermines confidence in the outcome of the case and renders that outcome unreliable." *Theriault*, 2015 ME 137, ¶ 19, 125 A.3d 1163.

[¶32] Here, the post-conviction court reasoned that the failure by counsel to argue self-defense under section 108(2)(A)(1) compromised the reliability of the conviction and undermined confidence in the judgment because the written argument disclaiming reliance on section 108(2)(A) might have affected the court's findings about whether Cardilli held an objectively reasonable belief that deadly force was necessary. *See* 17-A M.R.S. § 108(2)(A)(1) ("A person is justified in using deadly force upon another person: When the person reasonably believes it necessary and reasonably believes such other person is: About to use unlawful, deadly force against the person or a 3rd person.").

[¶33]  We must decide whether, given the findings of the trial court as to the level of threat that Muse posed and the findings of the post-conviction court as to the ineffective performance of counsel, the outcome is unreliable because there is a probability—sufficient to undermine confidence in the outcome—that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Theriault*, 2015 ME 137, ¶ 19, 125 A.3d 1163 (quotation marks omitted).

[¶34]  Although we do not require proof by a preponderance of the evidence that ineffective assistance of counsel more likely than not affected the outcome of the case, *see Pratt*, 2023 ME 66, ¶ 29, 303 A.3d 661; *Theriault*, 2015 ME 137, ¶ 20, 125 A.3d 1163, a post-conviction petitioner must prove that the ineffectiveness had some adverse effect on the defense that undermines the reliability of the outcome, *see Theriault*, 2015 ME 137, ¶ 19, 125 A.3d 1163. Here, Cardilli asserts that the post-conviction court was correct that his counsel's failure to press the section 108(2)(A)(1) justification in the memorandum had an adverse effect because the trial court could have concluded, if that argument had been pressed, that Cardilli's actions were justified.  The trial court's factual findings, however, leave no room for any argument that his use of deadly force against Muse was justified under either

the section 108(2)(B) justification that Cardilli's memorandum argued or the section 108(2)(A)(1) justification that the post-conviction court determined should have been argued in the memorandum.

[¶35]  To overcome the section 108(2)(B) justification, the State had to prove beyond a reasonable doubt that Cardilli's belief that deadly force was necessary to prevent Muse from inflicting bodily injury was unreasonable. *See Cardilli*, 2021 ME 31, ¶¶ 21-23, 254 A.3d 415.  Even though Muse was in fact inflicting bodily injury on Cardilli, the trial court found that the State had met its burden.  The trial court made findings that Muse was not armed, asked for his phone to call for a ride home when he saw Cardilli's gun, did not at any time try to grab the gun, was impaired from drinking all day, and had punched Cardilli several times, and that Cardilli was concerned that Muse might take control of the gun.  After making these and other findings, the trial court evaluated the justification that Cardilli's memorandum argued, 17-A M.R.S. § 108(2)(B), and concluded that if Cardilli actually believed that deadly force was necessary to prevent Muse from inflicting bodily injury on Cardilli or someone else, the belief was not objectively reasonable.

[¶36]  To overcome the section 108(2)(A)(1) justification that the post-conviction court found should have been argued in the memorandum, the

State would have had a less burdensome task—to prove that if Cardilli believed that deadly force was necessary to prevent Muse from imminently using unlawful *deadly* force, the belief was unreasonable. *See Cardilli*, 2021 ME 31, ¶¶ 21-23, 35, 254 A.3d 415. The court's findings—particularly the additional finding that Cardilli "introduced the *only* deadly force to the situation" (emphasis added)—eliminate any possibility that a defense based on Cardilli's belief that Muse was about to use deadly force could have succeeded.[2]

[¶37] If the trial court's findings of fact even arguably left room for the legal argument that Cardilli says his counsel should have pursued, the omission of the argument in Cardilli's memorandum might be said to have had an adverse effect on his defense. Here, however, the legal argument is flatly incompatible with the court's findings about what occurred. The premise that counsel's failure to advance a legal argument might have affected the court's factual findings is itself doubtful. It is the facts of a case that determine what legal arguments can be made; the legal arguments presented do not determine what the facts are. The omission of a legal argument might result in the court not

---

[2] Deadly force is not "present in all fistfights" just "because a punch could cause a variety of serious harms." *State v. Ricky G.*, 2000 ME 190, ¶ 5, 760 A.2d 1065. We have rejected the premise that "anyone threatened with a punch would be justified in using deadly force to defend himself." *Id.* Moreover, when a person introduces a gun into a confrontation with a person who is unarmed, there is *always* a possibility that the other person will try to gain control of the gun. The mere possibility does not support a belief that the other person is "about to use unlawful, deadly force" for purposes of section 108(2)(A)(1) and does not justify a shooting.

considering certain facts or reaching findings that would determine the applicability of a statutory justification, but that did not happen here. The trial court actually reached the question of whether Muse had used or was about to use deadly force during the confrontation and decided that the only deadly force involved was Cardilli's. As we said in reviewing Cardilli's direct appeal, the explicit findings of the trial court "regarding the level of 'threat' posed by Muse *preclude* a finding that Cardilli held an objectively reasonable belief that Muse was about to use unlawful, deadly force against anyone in the household." *Cardilli*, 2021 ME 31, ¶ 35, 254 A.3d 415 (emphasis added).

[¶38] We discern no support in the record for a finding that Cardilli's defense was prejudiced by his attorneys' handling of the self-defense justification set forth in section 108(2)(A)(1). Accordingly, we vacate the post-conviction court's judgment and remand for the entry of a judgment denying Cardilli's petition for post-conviction relief.

The entry is:

> Judgment vacated. Remanded for entry of judgment denying the petition for post-conviction relief.

22

Aaron M. Frey, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant State of Maine

Thomas F. Hallett, Esq. (orally), Hallett Whipple Weyrens, Portland, for appellee Mark Cardilli Jr.

Cumberland County Unified Criminal Docket docket number CR-2022-1145
FOR CLERK REFERENCE ONLY